**EXHIBIT A**

State of Illinois            )
                             ) ss
County of St. Clair          )

**UNSWORN DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF COMPLAINT FOR FORFEITURE**

I, Brandon Smiley, declare under penalty of perjury the following:

At all relevant times, I have been a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA).  The contents of this Declaration are based on information provided to me during the course of my investigation from participants in the criminal activity, from other witnesses, and from other law enforcement officers.

1.      On February 9, 2024, Drug Enforcement Administration Task Force Officer Lucas Ward (TFO Ward) and declarant conducted a traffic stop on a white 1993 Chevrolet Recreational Vehicle (RV), bearing an Oklahoma registration, on Interstate 270 westbound near mile marker 9.  The RV was registered to Khalid PERVEZ with a Tulsa, Oklahoma address.

2.      The TFOs observed the RV swerving over the right-hand fog line several times, in violation of 625 ILCS 5/11-709 (Improper Lane Usage); speeding 78 miles per hour in a 65 mile per hour zone in violation of 625 ILCS 5/11-601(b); and having a defective front windshield, in violation of 625 ILCS 5/11-709.1.

3.      Prior to initiating a traffic stop, I conducted a computer inquiry of the vehicle registration through License Plate Readers (LPR), which showed the vehicle on February 6, 2024: traveling East bound on Interstate 44 near Joplin, Missouri at 12:02 p.m.; traveling East bound on Interstate 44 near St. Clair, Missouri at 4:34 p.m.; and traveling East bound on Interstate 270 near Granite City, Illinois at 8:28 p.m. The TFOs noted that traveling East bound on February 6, 2024, and now traveling West bound on February 8, 2024, indicated a quick turn-around trip.

4.      The TFOs conducted a traffic stop of the RV on Interstate 270 West bound near mile marker 9. Declarant exited the patrol vehicle and approached the passenger side of the vehicle. While approaching the passenger side middle door, a male, later identifying himself as Khalid PERVEZ, quickly exited the driver's side of the RV and met me on the passenger side of the RV.  Based on training and experience, the TFOs know that it is common for individuals involved in criminal activity to exit the vehicle and approach the officer without being told to in an attempt to distract the officer's focus.

5.      Declarant informed the PERVEZ of the reason for the stop and the multiple violations that were committed.  PERVEZ stated that he had been driving since 6 a.m. that morning. PERVEZ was looking around constantly while declarant was talking to him, which is indicative of nervous behavior.

6.      Declarant asked PERVEZ for his driver's license.  PERVEZ responded by attempting to explain that he used his turn signal even though that was not one of the violations he committed.  Declarant asked for PERVEZ's driver's license a second time before PERVEZ went to the driver's side of the vehicle to get his wallet.  Declarant noted that PERVEZ had a cracked windshield and PERVEZ stated someone threw something at the windshield and that he was going back home to fix it.

7.      PERVEZ stated he made a mistake and locked the keys and his wallet, which contained his driver's license, inside the vehicle. Agents noted that the doors to the RV had to be manually locked and do not lock on their own.

8.      PERVEZ stated that his driver's license was out of Pennsylvania.  Declarant wrote down PERVEZ's information and handed it to TFO Ward to check for wants/warrants.

9.      PERVEZ stated several times that he had a Commercial Driver's License (CDL) and did not want any trouble.  PERVEZ was very nervous about receiving anything that would affect his CDL.

10.     PERVEZ stated that he usually keeps a second key in his wallet which was locked in the vehicle.

11.     PERVEZ stated that he was traveling to Tulsa, Oklahoma for a visitation with his 14-year-old autistic son.  PERVEZ stated that he lives in Pennsylvania and his wife and son live in Oklahoma.

12.     PERVEZ stated that he left Harrisburg, Pennsylvania yesterday (2/8/2024) and was heading to Oklahoma.  PERVEZ stated that he stopped at a rest area in Illinois but could not remember the location of the rest area at that time.  PERVEZ stated that the rest area was approximately two hours away.

13.     PERVEZ stated that he was going to find a job in Tulsa, but he was not moving there. He stated he was looking for a trucking job with a route that he could drive from Oklahoma to Pennsylvania. PERVEZ stated that he had his own semi-truck sitting in Oklahoma.

14.     Declarant noted that while speaking with PERVEZ, PERVEZ was constantly moving his hands nervously and gripping his hands tightly.

15.     PERVEZ stated that he owns property in Tulsa after stating he was not moving there. PERVEZ also stated that he does not stay in the RV because he has a place to stay in Tulsa which contradicted his previous statement about not living in Tulsa.  PERVEZ also stated that he has visitation with is son in Oklahoma every weekend.

16.     While speaking with declarant, PERVEZ stated that the speed limit was 70 mph, but I informed him that the speed limit changed to 65 mph a few miles east of the where the traffic stop

3

occurred, near mile marker 16 on Interstate 70. PERVEZ apologized for speeding and thanked me for letting him know. PERVEZ stated that this is the first time he drove the RV to Pennsylvania from Oklahoma.

17.     PERVEZ stated he has a couple of companies that he was going to talk to about leasing onto, but he did not have a Department of Transportation (DOT) number yet.

18.     Simultaneously, while declarant was talking to PERVEZ, TFO Ward returned to the patrol vehicle, ran PERVEZ's information through law enforcement databases, and completed a warning.  TFO Ward also requested that a K9 TFO respond to the scene.

19.     TFO Ward found that PERVEZ was previously convicted of theft (2005) and leaving the scene of an accident with a fatality (2009).  PERVEZ was clear of any wants/warrants and had a valid Pennsylvania driver's license issued on February 8, 2024.

20.     At approximately 8:25 a.m., TFO Stephen Moravec, with his K9 partner Tobi, arrived on scene.  TFO Moravec asked PERVEZ if there was anything illegal inside of the vehicle in which PERVEZ stated there was not. TFO Moravec asked PERVEZ if there were any large amounts of United States currency inside the vehicle and PERVEZ stated there was not. TFO Moravec asked PERVEZ for permission to search the vehicle and PERVEZ stated there was nothing in there. Declarant asked for permission to search the vehicle and PERVEZ stated that he did not sell any drugs and that TFO Ward was just going to give him a warning.

21.     Declarant confirmed that he was only going to give PERVEZ a warning for the violations, but asked again if PERVEZ would give permission for a search of the RV. PERVEZ again stated there was nothing illegal inside of the RV and asked what the TFOs were looking for. Declarant asked again for permission to search the RV and PERVEZ mumbled something in reply, but it could not be understood. PERVEZ then asked again what the TFOs were looking for.

4

22.     After being told again what the TFOs were looking for, PERVEZ changed his story and stated he did have some money inside, but it was "not that much." Declarant asked how much money was inside of the RV and asked if it was $5,000. PERVEZ paused for a short time to think and then asked how much money made it illegal to transport. Declarant informed PERVEZ that there was not a set amount of money that was illegal to transport.  Declarant asked again how much money was inside the RV and PERVEZ stated that he did not understand what they were trying to do.

23.     Based on training and experience, PERVEZ's quick travel to Pennsylvania from Oklahoma for less than one day, PERVEZ's nervous behavior, PERVEZ jumping out of the vehicle and manually locking his keys in the vehicle, PERVEZ first stating that he did not have any money inside the RV and then changing his story and advising there was money inside of the RV, PERVEZ's actions and constant deflecting from giving permission to search the vehicle, led the TFOs to believe that PERVEZ was involved in criminal activity.

24.     Declarant asked again how much money PERVEZ had inside of the RV and asked if it was one million dollars.  PERVEZ stated it was not one million and laughed.

25.     At approximately 8:30 a.m., TFO Moravec handed PERVEZ a wedge and metal rod that is commonly used to access vehicles by law enforcement.  PERVEZ was asked if he could use that to get into the RV.  PERVEZ went to the driver's side of the RV and attempted to use the tools to get into the RV, but he was unsuccessful.  TFO Moravec was told PERVEZ had a large amount of currency in the RV and he asked PERVEZ why PERVEZ told him he did not have a large amount of currency earlier. PERVEZ argued that he did not tell TFO Moravec that earlier and stated that he did not have a large amount of currency inside the RV that was being used to buy drugs.

26.     PERVEZ stated he had approximately 40-50 thousand dollars inside the RV.  PERVEZ stated he was looking to buy another semi-trailer that he could possibly locate on the side of the road

which he stated he always looks for when he is traveling.

27.     PERVEZ stated he always carries a large amount of cash because he does not carry a credit card due to interest being banned in Islam.  PERVEZ then changed his previous statement and stated that he does not put his money in banks because the interest made on the money is banned by Islam.

28.     TFO Griffin Diecker, TFO Leo Kelly, and TFO Dustin Campbell arrived on scene to assist.

29.     At approximately 8:35 a.m., PERVEZ was escorted to declarant's patrol vehicle for safety while TFO Moravec performed a free air sniff of the RV with his K9 partner Tobi.

30.     While TFO Moravec was conducting the free air sniff, declarant observed several things while talking to PERVEZ.  PERVEZ looked defeated, by dropping his head and shoulders in a downward motion when he observed K9 Tobi performing the free air sniff of the vehicle.

31.     PERVEZ stated he never even smoked cigarettes before. PERVEZ advised he was trying to pay close attention to what K9 Tobi was doing while speaking with declarant.  PERVEZ stated he carries the money because he needs to buy a trailer, new stuff for his truck, used stuff for his RV, and stuff for a Volkswagen he owns.  PERVEZ stated most of the people want cash.

32.     Upon completing the free air sniff, TFO Moravec informed declarant that K9 Tobi indicted to a positive odor of narcotics emanating from the vehicle. Declarant read PERVEZ his Miranda rights. Declarant asked PERVEZ if he understood his Miranda rights and PERVEZ replied "yes."

33.     Declarant asked PERVEZ where the money inside of the RV came from. PERVEZ stated he had been saving for a long time and the money came from payments from driving a truck in the past.  PERVEZ stated that he has been saving the money all of his life.  PERVEZ then stated he

was going to be using the money to purchase things from the Oklahoma state auction coming up in June.  He stated he wanted to buy commercial property, a new semi-trailer, and give the rest to his son. PERVEZ stated that his trailer is too old to use, and companies will refuse to give him loads because of it.  PERVEZ stated that he is looking for a good-priced trailer that is less than five years old.  PERVEZ stated he would buy one off the side of the road if he could find a good deal.  PERVEZ stated that the currency was inside a food bag inside of the RV.

34.     TFO Moravec informed PERVEZ that K9 Tobi alerted to the odor of narcotics. PERVEZ put his hands down in front of him and dropped his head down in a defeated manner.  TFO Moravec asked why PERVEZ told him there was not a large amount of currency in the vehicle and PERVEZ stated he gets confused.

35.     After conferring with the Pontoon Beach Police Department about the use of a "slim jim" tool, TFO Campbell contacted a tow company to respond to the scene and assist with unlocking the RV.  Special Agent Winfred Strickland (SA Strickland) and TFO Kurt Schmulbach also arrived on scene to assist.

36.     Declarant continued speaking with PERVEZ and asked PERVEZ how the currency was banded inside of the bag.  PERVEZ stated there were no rubber bands or bank bands around the currency.  PERVEZ then changed the amount and advised it was sixty thousand dollars and it was banded in ten-thousand-dollar increments.  PERVEZ stated he would wrap a one-hundred-dollar bill around each ten-thousand-dollar bundle.  From declarant's training and experience, if someone is banding currency in ten-thousand-dollar increments, they would know exactly how much money they have.

37.     Declarant asked PERVEZ if he kept any receipts from the money he was paid while he was working and he stated "yes, in Pennsylvania."  He then immediately changed his statement saying

7

the receipts were in Tulsa.  PERVEZ stated the last time he leased onto a company they paid him in

cash and gave him a receipt.

38.     PERVEZ was asked why he jumped out of the RV so fast when he was first stopped,

and he said he got confused and he should not have done that. PERVEZ stated he just stays in Tulsa

right now and does not travel back and forth to Pennsylvania. PERVEZ then contradicted himself and

stated that he is using the currency in the vehicle to support himself and drive back and forth to

Pennsylvania. PERVEZ further stated he would travel back and forth from Oklahoma to Pennsylvania

every couple of months. PERVEZ stated that he has four cars sitting in Tulsa that are all broken down.

PERVEZ stated that if he decided to live in Tulsa, he was going to buy commercial property and build

a house.

39.     Declarant noticed PERVEZ rubbing his hands constantly while talking to him, which is

another sign of being nervous.  Additionally, PERVEZ was complaining that his lips get dry when he

talked to people as well, which is also indicative of nervousness.

40.     When asked about paycheck stubs from his previous jobs, PERVEZ stated that he did

not have any, but the companies would give him a 1099 to file because they would pay him in cash.

PERVEZ stated the last time he worked was in April of 2023. PERVEZ stated several times that he as

an electrician and a mechanic as well.

41.     PERVEZ stated that the last company he worked for was Petrol Roadways in 2003.

PERVEZ then changed his story and stated he worked in April of 2023. PERVEZ stated he was just in

Tulsa last week and that he does travel back and forth often. PERVEZ stated that before his son was

born, he smoked cigarettes but stopped after his son was born. Earlier PERVEZ stated he never

smoked cigarettes. PERVEZ then went on to say he had been saving money since he was child, which

contradicted his earlier statement.

8

42.     Declarant asked PERVEZ if he had ever been in trouble before and PERVEZ stated he had not. Declarant asked PERVEZ if he had ever been arrested before and PERVEZ said a long time ago for leaving the scene of a traffic crash. PERVEZ stated he had never been in any other trouble. PERVEZ's criminal history showed both the arrest for leaving the scene of a fatal traffic crash and theft.

43.     When asked how much he paid for the RV, PERVEZ stated he paid $3500 cash. PERVEZ stated the money inside the RV consisted of all one-hundred-dollar bills.

44.     At approximately 9:32 a.m. a tow truck from Mick's Garage arrived on scene and was able to gain access to the interior of the RV.

45.     During a search of the RV, a large amount of United States currency was located inside a Ziplock style bag, that was wrapped inside a plastic grocery bag, inside of lunch box, inside approximately four other plastic grocery bags.

46.     TFO Ward, as witnessed by declarant, secured the currency inside of a self-sealing evidence bag. PERVEZ signed the bag claiming the currency belonged to him.

47.     For safety purposes, the RV was re-located to the DEA Fairview Heights Resident Office for a more thorough search.  Declarant drove the RV and was followed by TFO Ward.  SA Strickland transported PERVEZ and the seized currency.

48.     During an audio/video recorded interview, PERVEZ stated that:

- most of the time he stays in Tulsa, Oklahoma;

- his house in Pennsylvania went into foreclosure and that he is slowly moving to Oklahoma;

- he purchased property in Oklahoma for the back taxes;

- he was carrying the cash on the day of the traffic stop and seizure for an auction in Tulsa on June 14, 2024;

- he doesn't like his current rental property and is waiting on other property to change his physical address;

- he only has the RV and a truck registered in his name;

- he owns four other broken down vehicles, including a semi-truck; however, none of those vehicles are currently registered;

- he doesn't travel between Pennsylvania and Oklahoma anymore because he cannot afford it; and

- he stopped looking for a job and is going to "do his own thing."

49.    A search of Pennsylvania property records shows a foreclosure action was filed against PERVEZ's property in 2007.  The property was sold in 2008.  (*Deutsche Bank National Trust Company v. Khalid Pervez*, C-48-CV-2007-08659).

50.    An official count of the seized United States currency was conducted.  The amount totaled $66,600.00.

51.    Based on the foregoing, declarant believes that the $66,600.00 in United States Currency is property which constitutes money furnished or intended to be furnished by a person in exchange for a controlled substance, or proceeds traceable to such an exchange, or money used to facilitate a violation of 21 U.S.C. Section 801 *et seq.*

Pursuant to 28 U.S.C. Section 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 18 day of June, 2024.

TFO _____
BRANDON SMILEY
Task Force Officer
Drug Enforcement Administration